# United States Court of Appeals
## For the First Circuit

No. 12-2450

ORLANDO ALEJANDRO-ORTIZ and SONIA RODRÍGUEZ-JIMÉNEZ;
J.A.A.R., minor represented by Orlando Alejandro-Ortiz and
Sonia Rodríguez-Jiménez, parents; B.A.R., minor represented by
Orlando Alejandro-Ortiz and Sonia Rodríguez-Jiménez, parents,

Plaintiffs, Appellees,

v.

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA),

Defendant, Appellant,

AMERICAN INTERNATIONAL INSURANCE COMPANY OF PUERTO RICO,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia L. Carreño-Coll, U.S. Magistrate Judge]

Before
Torruella, Baldock,[*] and Thompson,
Circuit Judges.

Adrian Moll-Lugo, on brief for appellant.
David Efron, Joanne V. Gonzáles-Varón, and Law Offices of
David Efron, P.C., on brief for appellees.

June 20, 2014

---

[*] Of the Tenth Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** We review the district court's denial of defendant-appellant Puerto Rico Power Authority's ("PREPA") Rule 50(a) motion for judgment as a matter of law. Fed. R. Civ. P. 50(a). Plaintiffs, a husband and wife suing in their own name and on behalf of their minor children, complained of injuries brought about by a power line, owned by PREPA, with which the husband came into contact. This appeal concerns only the claims of the wife, Sonia Rodríguez-Jiménez ("Rodríguez").

Rodríguez's claims are time barred by the Puerto Rico one-year statute of limitations. P.R. Laws Ann. tit. 31, § 5298. After thoughtful analysis of Puerto Rico Supreme Court case law, and of our own precedent, we find that the jury should have never been led down the path towards deliberation on Rodríguez's claims. Accordingly, we reverse the district court's denial of PREPA's Rule 50(a) motion, and we grant PREPA judgment as a matter law.

## I. Background

Orlando Alejandro-Ortiz ("Alejandro") worked as a garbage collector, and on May 6, 2008, he was on the job in the town of Aguas Buenas, Puerto Rico. While on the road, he and his work companions came to a stop as they approached a downed power line blocking their path. Contrary to his own employer's protocol -- and perhaps to common sense -- Alejandro endeavored to resolve the matter himself. Alejandro tied a rope to the power line and looped the rope over another higher hanging wire, so as to create a pulley

-2-

mechanism.  He then proceeded to hoist the downed power line up to a suitable height for their truck to pass, but was unable to complete the task.  Alejandro received a powerful electrical discharge and was immediately rushed to the hospital.

That same day, Rodríguez arrived at the hospital to tend to her husband.  Upon arrival she learned that her husband had been injured by an electric shock while handling a live wire.

The next month, Rodríguez sought advice from her priest.  The cleric told Rodríguez that he believed she had a cause of action against PREPA, and advised her to visit an attorney.  Rodríguez did just that, seeking counsel from an attorney by the name of Pedro Cruz, also in June of 2008.

Exactly what was discussed at Rodríguez's consultation is unknown.  Suffice it to say that, during trial, Rodríguez testified that she left with the impression, given by Counsel Cruz, that she in fact did not have a cause of action.  Consequently, Rodríguez laid the matter to rest.

Later, at the end of 2009, Rodríguez received an apparently unsolicited call from one Ricky Espinosa, Esq.  Counsel Espinosa informed Rodríguez that she indeed had a cause of action stemming from the emotional anguish she suffered due to her spouse's injuries from his encounter with the power line on May 6, 2008.  How Counsel Espinosa, in Texas, learned of Rodríguez's woes is, apparently, a mystery.

Rodríguez and Alejandro, suing on their own behalf and that of their minor children, filed suit against PREPA, and its insurer Chartis,[1] on April 16, 2010. On September 20, 2011 the parties informed the district court that Chartis had settled with plaintiffs[2] all claims in excess of one million dollars -- PREPA is self-insured up to that amount. Trial ensued.

At the close of plaintiffs' case in chief, PREPA moved the district court for judgment as a matter of law. PREPA argued, as it does now, that Rodríguez's claims were time barred by the Puerto Rico one-year statute of limitations. P.R. Laws Ann. tit. 31, § 5298. The district court reserved its ruling on the motion, and trial continued.

At the close of all the evidence, the district court denied PREPA's Rule 50(a) motion. The court noted that Rodríguez, according to her own testimony, learned of her husband's injuries on the day of the accident, May 6, 2008. That same day, Rodríguez also learned that Alejandro's injuries had been caused by an electrical discharge received during his attempt at clearing a downed power line from the road. Thus, the court continued, the statute of limitations period began to run that same day, and, in

---

[1] At the time named American International Insurance Company of Puerto Rico.

[2] Though the parties are also at odds on whether the settlement agreement encompassed Rodríguez's claims, given our conclusion today, the issue is moot.

-4-

order to preserve her claims, Rodríguez was obligated to file suit within the year, or by May 7, 2009. The court then noted that Rodríguez did not file suit until April 16, 2010. That should have been the end of it.

However, the district court then reasoned that "the determination of whether Rodríguez's claims are time barred thus becomes a discussion of whether she exercised due diligence in prosecuting her claims," a question of fact for the jury. Presumably, the district court figured this to be the proper inquiry because Rodríguez had explained that the reason for her delay in filing suit was the impression, given by Counsel Cruz, that she "did not have a case."

Accordingly, the district court ordered the jury to retire with instructions and a verdict form that asked whether Rodríguez had been reasonably diligent in pursuing her claims. The jury answered the question in the affirmative, found PREPA liable, and awarded plaintiffs $3,465,000. At that time, PREPA renewed its Rule 50 motion. Fed. R. Civ. P. 50(b).

The district court denied the Rule 50(b) motion on much the same grounds as the earlier Rule 50(a) motion. Relying on our decisions in Villarini-García v. Hosp. del Maestro, Inc., 8 F.3d 81 (1st Cir. 1993), and Rodríquez-Surís v. Montesinos, 123 F.3d 10 (1st Cir. 1997), the district court reiterated its belief that the relevant inquiry was whether Rodríguez acted diligently in pursuing

-5-

her claims.  The court concluded that there was sufficient evidence for the jury to have answered the inquiry in the affirmative. PREPA's timely appeal followed.[3]

## II.  Discussion

We review the denial of a Rule 50(a) motion for judgment as a matter of law de novo.  Monteagudo v. Asociación de Empleados del Estado Libre Asociado, 554 F.3d 164, 170 (1st Cir. 2009).  We examine the evidence in the light most favorable to the nonmovant and will grant the motion only "when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party."  Id. (internal quotation marks omitted).

This appeal arises from a diversity action and, accordingly, we must apply state substantive law and federal rules for procedural matters.  Hoyos v. Telecorp Communications, Inc., 488 F.3d 1, 5 (1st Cir. 2007) (citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996); and Erie R.R. Co. v. Tompkins, 304 U.S. 64, 92 (1938) (Reed, J., concurring in part)). When sitting in diversity, "our objective is solely to determine what is the law as indicated by [the commonwealth's] authoritative sources," Rodríguez-Surís, 123 F.3d at 13, and we are "absolutely

---

[3]  Post-trial, the court also denied PREPA's Rule 59(b) motion for new trial and its Rule 60(b) motion for relief from judgment. Given the result we reach today, we need not address either of these rulings.

bound by a current interpretation of that law formulated by the [commonwealth's] highest tribunal," Daigle v. Me. Med. Ctr. Inc., 14 F.3d 684, 689 (1st Cir. 1994).

In Puerto Rico, the statute of limitations is a substantive and not a procedural matter. Olmo v. Young & Rubicam of P.R., Inc., 110 P.R. Dec. 740, 742 (1981), 10 P.R. Offic. Trans. 965, 969 (1981).[4] It provides that a cause of action for civil liability will expire and become legally unenforceable one year from the "time the aggrieved person had knowledge thereof." P.R. Laws Ann. tit. 31, § 5298. According to the Puerto Rico Supreme Court, a plaintiff will have "knowledge" of her claim once she has actual knowledge of both the injury and of the identity of the person who caused it. Colón Prieto v. Géigel, 15 P.R. Offic. Trans. 313, 330-31 (1984). Finally, "[i]f a plaintiff brings an action more than a year after the injury took place, she bears the burden of proving that she lacked the requisite 'knowledge' at the relevant times." Hodge v. Parke Davis & Co., 833 F.2d 6, 7 (1st Cir. 1997) (citing Rivera Encarnación v. Estado Libre Asociado de Puerto Rico, 13 P.R. Offic. Trans. 498, 501-02 (1982)).

In Rodríguez-Surís we discussed Colón-Prieto at length. Essentially, we deconstructed the concept of knowledge into three components. 123 F.3d at 13-17.

---

[4] Hereinafter, citations to Puerto Rico cases will be to P.R. Offic. Trans., when available.

First, actual knowledge occurs when a plaintiff is "aware of all the necessary facts and the existence of a likelihood of a legal cause of action." Id. at 14. We clearly stated that the Supreme Court of Puerto Rico explained in Colón-Prieto that this is tantamount to the plaintiff having knowledge of the injury and of the identity of the author of the injury. Id. at 15.

Second, we illustrated the concept of deemed knowledge, an objective inquiry where the plaintiff, while not having actual knowledge, is deemed to be on notice of her cause of action if she is aware of certain facts that, with the exercise of due diligence, should lead her to acquire actual knowledge of her cause of action. Id. at 16. The concept of deemed knowledge is essentially parlance for the discovery rule, which stands for the proposition that "[t]he one-year [statute of limitations] does not begin to run until the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit." Villarini-García, 8 F.3d at 84.

Finally, we noted that Puerto Rico law provides an exception to the applicability of both modalities of the "knowledge" requirement. Where the tortfeasor, by way of assurances and representations, persuades the plaintiff to refrain from filing suit, or otherwise conceals from the plaintiff the facts necessary for her to acquire knowledge, the statute of limitations will be tolled. Rodríquez-Surís, 123 F.3d at 16 ("If

-8-

a plaintiff's suspicions that she may have been the victim of a tort are assuaged by assurances made by the person who caused the injury, a plaintiff will not be held responsible for failing to pursue her claim more aggressively." (citing Colón Prieto, 15 P.R. Offic. Trans. at 329-30)).

With this framework in mind, it becomes clear that Rodríguez's cause of action expired on May 7, 2009. Rodríguez learned of her husband's injuries, the cause of her own emotional pain, on the day of the accident -- May 6, 2008. That same day, she learned that Alejandro's injuries had been caused by his encounter with a power line. PREPA is charged with the distribution of electrical power throughout Puerto Rico. P.R. Laws Ann. tit. 22, § 196. That power lines in Puerto Rico are the property of PREPA would be a foregone conclusion to virtually any island resident. It was at that time, therefore, that she acquired knowledge of the injury and of the identity of the tortfeasor. See P.R. Laws Ann. tit. 31, § 5298; Colón Prieto, 15 P.R. Offic. Trans. at 330-31. At that moment, Rodríguez acquired sufficient information to bring suit, and the clock began to tick. Colón Prieto, 15 P.R. Offic. Trans. at 330-31. Accordingly, by May 7, 2009, the statute of limitations on Rodríguez's cause of action had run.

However, the district court opted for a different approach. Though it is undisputed that Rodríguez learned that

Alejandro's injuries had been caused by PREPA's power line on the day of the accident, the district court did not find she acquired the requisite actual knowledge on May 6, 2008. Quoting Rodríguez-Surís, the district court instead asked whether Rodríguez had knowledge of the "likelihood of legal liability." See Rodríguez-Surís, 123 F.3d at 13-14 ("If a plaintiff is not aware of some reasonable likelihood of legal liability on the part of the person or entity that caused the injury, the statute of limitations will be tolled."). Fully crediting Rodríguez's testimony that she did not know of PREPA's liability, the district court then asked whether Rodríguez pursued her claims with reasonable diligence.

In Rodríguez-Surís, recipients of collagen injections sued the manufacturer of the substance and the cosmetologist who administered it for injuries to their respective faces. Id. at 12, 17. The district court granted summary judgment in favor of defendants, finding that the statute of limitations had run on plaintiffs' claims. Id. at 20. We reversed, and found that defendant Montesino's assurances to the plaintiffs that their injuries would subside, if reasonably relied on -- a question for the jury -- would have tolled the statute of limitations. Id. at 22-23.

We disagree with the district court's reliance on the phrase "likelihood of legal liability" from Rodríguez-Surís in framing the knowledge inquiry in the present case; a plaintiff's

-10-

perception of the probability of legal liability does not bear upon the knowledge inquiry. Indeed, immediately following the quoted phrase, we clarified that we meant "[i]n other words, [that] a plaintiff must also have 'knowledge of the author of the injury.'" Id. at 14. We again addressed the misquoted phrase in González-Pérez v. Hospital Interamericano de Medicina Avanzada (HIMA), 355 F.3d 1 (1st Cir. 2004), and rejected any reading of it that suggests that the statute of limitations begins running only once the plaintiff is confident she has a "case worth pursuing." Id. at 4. We reiterated that a claim accrues, and the statute of limitations begins running, once the plaintiff learns of the injury and the identity of the tortfeasor. Id. at 4 n.5. (quoting Rodríquez-Surís, 123 F.3d at 13-14). No other elements are required.

Notwithstanding this clarification and the fact that Rodríguez learned of her husband's accident with PREPA's power line on the same day it occurred, the district court answered the actual-knowledge inquiry in the negative.[5] However, the district court should have found that Rodríguez possessed sufficient information to permit suit on the day of the accident, May 6, 2008,

---

[5] The district court did not altogether ignore our explanation of the phrase. It reversed the order of the passage, overlooked the following sentence, and apparently took our exposition to mean that knowledge of the author of the injury requires that the plaintiff know the identity of the tortfeasor, and, additionally, awareness of some probability that the tortfeasor may be legally liable.

-11-

and that by May 7, 2009, her cause of action had expired.  Colón Prieto, 15 P.R. Offic. Trans. at 330-31.  Accordingly, there remained no question for the jury to answer regarding Rodríguez's claims.

Assuming, arguendo, that Rodríguez did not acquire actual knowledge on May 6, 2008 -- because she was somehow unaware of the identity of the owner of the power line -- it would then become relevant to address the deemed-knowledge inquiry as to the identity of the tortfeasor.  See Rodríguez-Surís, 123 F.3d at 14.  That is, there being no dispute as to when Rodríguez acquired knowledge of the injury, the question by the district court should have been whether she was diligent in ascertaining the identity of the tortfeasor; this would have provided Rodríguez with sufficient information to bring suit.  Colón Prieto, 15 P.R. Offic. Trans. at 330-31 ("[T]he statute of limitations is triggered off by the notice of the injury, plus notice of the person who caused it.") (emphasis omitted) (internal quotation marks and citations omitted).  A mere glance at her electricity bill would have allowed Rodríguez to discover that the owner of the power line was PREPA. Therefore, even under the rather outlandish assumption that Rodríguez did not actually know that PREPA was responsible for the power line, the statute of limitations for Rodriguez's claims began to run on May 6, 2008.

That an attorney counseled Rodríguez against suit is of little consequence in her case. According to the Puerto Rico Supreme Court, only the assurances of the tortfeasor, and not those of a third party, could have had any effect on the statute of limitations then running on her cause of action. Colón Prieto, 15 P.R. Offic. Trans. at 329-30. This is the law in Puerto Rico, and with good reason. The chief purpose of the statute of limitations is to provide resolution and stability to potential litigants, so that persons are not exposed indefinitely to the threat of suit. Cintrón v. Commonwealth of Puerto Rico, 127 P.R. Dec. 582, 588 (1990), 27 P.R. Offic. Trans. __ ("[T]he principal purpose of a statute of limitations is to secure the economic and social stability of bilateral relations by encouraging swift claims for the performance of contractual or legal obligations and thus procure the tranquility of the defendant against the eternal threat of civil suit.") (citations omitted). A cause of action ought not be Damocles's sword.

Finally, a person in a position similar to that in which Rodríguez found herself after the accident is not without recourse. "Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." P.R. Laws Ann. tit. 31, § 5303. A plaintiff who is aware of her injury and of the identity of the person who caused it, but is not entirely convinced

of the legal implications of her circumstances, may toll the statute of limitations by either filing suit, or by making an extrajudicial claim. See Tokyo Marine & Fire Ins. Co. v. Pérez & Cía. de P.R., Inc., 142 F.3d 1, 4 (1st Cir. 1998). Thus, a letter to PREPA might have sufficed to toll the statute of limitations and would have provided Rodríguez additional time to gather more information on her claims, though clearly, none was needed.[6]

We took care in Rodríguez-Surís to dispel the notion that the statute of limitations only begins running once the plaintiff has assessed whether her claim has merit. Rodríguez-Surís, 123 F.3d at 13-14. She need only learn of the injury and of the identity of the tortfeasor. Id. And, given the Supreme Court of Puerto Rico's repeated assertions to that effect, we could not have held otherwise. See, e.g., Vera Morales v. Dr. Bravo, 161 P.R. Dec. 308, 328 (2004) 61 P.R. Offic. Trans. __ (holding that the statute of limitations for torts begins to run when the plaintiff learns of the elements necessary to bring suit -- that is, the injury and the identity of the tortfeasor); Montañez v. Hosp. Metropolitano, 157 P.R. Dec. 96, 106 (2002), 57 P.R. Offic. Trans.

---

[6] Relying on Puerto Rico Supreme Court precedent, we have explained that, in order to toll the statute of limitations, the extrajudicial claim "must be made by the holder of the substantive right (or his legal representative), it must be addressed to the debtor or passive subject of the right, not to a third party, and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit." Tokyo Marine, 142 F.3d at 4. (internal quotation marks and alterations omitted).

__ (same); <u>Cooperativa de Seguros Múltiples</u> v. <u>Carlo Marrero</u>, 182 P.R. Dec. 411, 426-27 (2011), 82 P.R. Offic. Trans. __ (finding that the statute of limitations began to run on plaintiff's cause of action on same day of accident, where plaintiff learned of his injuries and of the identity of the tortfeasor on that same day). Accordingly, on May 6, 2008, once Rodríguez learned of the accident and that it was caused by a power line owned by PREPA, she had all the necessary elements to bring suit. On May 7, 2009, it became too late for her to bring that claim.

### III. <u>Conclusion</u>

We hold Rodríguez's cause of action expired on May 9, 2009, and PREPA is entitled to judgment as a matter of law as to her claims. Therefore, we reverse in part the judgment of the district court, vacate the award on Rodríguez's claims, and remand to the district court for entry of judgment accordingly. It is so ordered. Each party will bear their own costs.

**<u>Reversed in part, Vacated in part and Remanded</u>**.