**Milagros GARCIA COLON, Plaintiff,**

v.

**Raul GARCIA RINALDI
et al., Defendants.**

**No. CIV. 01–1571(DRD).**

United States District Court,
D. Puerto Rico.

Sept. 30, 2004.

Eric M. Quetglas–Jordan, Esq., for Plaintiffs.

Hector Cuebas–Tanon, Esq., Jose A. Miranda–Daleccio, Esq., Jose H. Vivas, Esq., Jesus R. Morales–Cordero, Esq., Jose L. Gonzalez–Castaner, Esq., Dennis J. Cruz–Perez, Esq., Fernando E. Agrait–Betancourt, Esq., Isabel M. Guillen–Bermudez, Esq., Jorge E. Galva–Rodriguez, Esq., Luis R. Ortiz–Segura, Esq., Rafael Mayoral–Morales, Esq., Jose A. Santiago–Rivera, Esq., Angel Lopez–Hidalgo, Esq., Anselmo Irizarry-Irizarry, Esq., Juan M. Masini–Soler, Esq., Jorge E. Perez–Diaz, Esq., Hospital Dr. Susoni Inc., PRO SE, Jaime E. Morales–Morales, Esq., Pavia Health, Inc., PRO SE, Dario Rivera–Carrasquillo, Esq., Roberto Lefranc–Morales, Esq., for Defendants.

## OPINION & ORDER

DOMINGUEZ, District Judge.

Plaintiffs filed their complaint under to diversity jurisdiction, pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann § 5131. Plaintiffs sustain that while on the care of co-defendant Dr. Raul García Rinaldi, co-plaintiff Milagros García Colón, hereinafter García Colón, upon post operative complications due to an infected aortofemoral by-pass graft, suffered from more than one amputation of her legs. Plaintiffs sustain that García Colón was further treated for a right inguinal wound that was draining serous sanguineous fluids by co-defendant Dr. López de Victoria. Plaintiffs claim that said doctors together with the other co-defendants incurred in medical malpractice and/or are jointly and severally liable to the plaintiffs.

Pending before the Court is co-defendants', Guaranty Association of Miscelaneous Insurance, hereinafter Guaranty Association, in the interest of Hospital Dr. Susoni Inc, and Pavia Health Inc, and St Paul Fire and Marine Insurance Company *Motion for Summary Judgment*

(Docket No. 90) joined by co-defendant, Orlando López de Victoria, hereinafter López de Victoria, (Docket No. 91) and co-defendant, Raul García Rinaldi, hereinafter García Rinaldi, (Docket No. 106) request of the dismissal of the instant claim alleging that the complaint is time barred. Co-defendants sustain that the action was time barred at the moment that plaintiffs made the extrajudicial demand upon García Rinaldi. Further, co-defendants sustain that the extrajudicial claims to another tortfeasor did not toll the limitations period as of to them because Plaintiff knowing as to their identity did not timely toll the statute of limitations. Plaintiff duly opposed to co-defendants' request. (Docket No. 95). Plaintiffs sustain the statute of limitations was tolled due to a timely extrajudicial claim made against Dr. García Rinaldi, and since the rest of co-defendants are joint tortfeasors the statute of limitations was equally tolled against them. The Court referred the above-mentioned motions to Magistrate Judge Vélez–Rivé for the issuance of a report and recommendation. (Docket No. 121). The Magistrate issued her Report and Recommendation recommending the Court the denial of co-defendants' motion for summary judgment(Docket No. 136). The Magistrate concluded that there were issues as to material facts, as to the date when the plaintiffs acquired the required knowledge in order for the statute of limitations to begin to run, precluding the issuance of summary disposition. The Magistrate further concluded that, co-defendants were joint tortfeasors and as such, the tolling of the statute of limitations against García Rinaldi, effectively tolled the statute of limitations for all co-defendants.

Notwithstanding, on the Status Conference held on April 1st, 2004, the Court granted co-defendants' request of leave to file a supplemental summary judgment in order to incorporate information acquired in Dr. Samuel Ayala López's deposition. See Minute for Status Conference, (Docket No. 112). Co-defendants filed their *Supplemental Motions for Summary Judgment.*(Docket No. 124 and 152). Plaintiffs filed the corresponding oppositions. (Docket No. 144 and 161). Co-defendants replied to plaintiffs' opposition(Docket No. 151) which was duly sur-replied by the plaintiffs (Docket No. 162). The Court referred the supplemental motions for summary judgment to Magistrate Judge Vélez–Rivé for her to reconsider her Report and Recommendation (Docket No. 135). After considering co-defendants' supplemental motions (Docket No. 174), the Magistrate issued her Second Report and Recommendation (Docket No. 186). The Magistrate found no significant new issues requiring a different result from her previous Report and Recommendation. Accordingly, the Magistrate incorporated her original Report and Recommendation (Docket No. 136) as an integral part of her Second Report and Recommendation (Docket No. 186), and reiterated her initial recommendation of denying co-defendants request.

## I.

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico. *See Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing objections within ten (10) days after being served a copy thereof. *See* Local Rule 72(d); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

The "written objections shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the legal basis for such objections." Local Rule 72(d). Provided that both plaintiff and defendant have objected the Magistrate's determination, the Court shall make a *de novo* determination of the Magistrate's Report and Recommendation as to those parts that are timely objected.

## II. Summary Judgment Standard

Summary judgment is a procedural device designed to screen out cases that present no trial worthy issues. *See McCarthy v. N.W. Airlines, Inc.,* 56 F.3d 313, 314–15 (1st Cir.,1995).*Plumley v. Southern Container Inc.,* 303 F.3d 364, 368–69 (1st Cir., 2002). The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. *McIntosh v. Antonino,* 71 F.3d 29, 33 (1st Cir., 1995).

In conventional summary judgment practice, the moving party has the initial responsibility of suggesting the absence of a genuine issue of material facts. *Quintero de Quintero v. Aponte–Roque,* 974 F.2d 226, 227–28 (1st Cir.,1992). The moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–*

*Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997). That requires supporting the motion, by affidavits, admissions, or other materials of evidentiary quality, as to issues on which the movant bears the burden of proof. *McIntosh v. Antonino,* 71 F.3d at 33. A fact is "material" if it potentially could affect the suit's outcome. *Cortes–Irizarry v. Corporación Insular,* 111 F.3d 184, 187 (1st Cir., 1997). An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. *Id.* Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

Once the movant has fulfilled this obligation, the burden shifts to the summary judgment target to demonstrate that a trial worthy issue exists. *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000). The non-movant must present evidence with respect to each issue on which [its] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." *González–De–Blasini v. Family Department et al.,* 377 F.3d 81, 87–88 (1st Cir., 2004) *quoting DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir., 1997) *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differ-

ing versions of truth at trial." *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Fed.R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger weighted, because at the summary judgment stage, the Court may not weigh the evidence. *Cortés–Irizarry v. Corporación Insular*, 111 F.3d at 187; *see also Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Further, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 677 (1st Cir.1996) However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

### III. Magistrate Judge's Conclusions

The Magistrate Judge concluded that there were "genuine issues as to material facts resting on the credibility determinations as to the moment when plaintiffs acquired knowledge of Milagros Garcia's damages". *Magistrate's Report and Recommendation* (Docket No. 136, p. 5). Further, the Magistrate found controversy as to the representations and assertions made by the physicians preventing the plaintiffs from acquiring said knowledge. Id. Accordingly, she recommended the denial of the summary judgment.

The Magistrate Judge further found that plaintiffs' letters to Dr. García Rinaldi issued on August 15, 1997, June 11, 1998, May 14, 1999, February 10, 2000 and December 9, 2000 constituted an extrajudicial demand that tolled the statute of limitations and restarted the one year time period. Id. at p. 8. Since the interruption against a co-defendant tolls the statute as to all co-defendants that are jointly liable, the Magistrate further concluded that the statute of limitations was tolled for all the tortfeasors, including Dr. López de Victoria. Id. at 9. See also *Magistrate's Second Report and Recommendation* (Docket No. 186, p. 9–10). Hence, Magistrate Judge Vélez Rivé recommended the denial of defendants' request. Id.[1]

In sum, the Magistrate Judge recommended the denial of: (1)Guaranty Association of Miscellaneous Insurance on behalf of Hospital Dr. Susoni Inc., Pavia Health Inc, St Paul Fire and Marine Insurance Company's *Motion for Summary Judg-*

---

1. As to co-defendants' *Supplemental Motion for Summary Judgment,* the Magistrate concluded that co-defendants failed to provide any new information that would justify the Magistrate's departure from her original conclusions in her original Report and Recommendation. Accordingly, she recommended the denial of co-defendants *Supplemental Motion for Summary Judgment.* Id. at 12. The Magistrate found that there still were genuine issues of material fact that precluded the issuance of summary disposition. Id. at 14. The Magistrate found that the evidence tended to indicate García Colón and her children trusted the physicians and lacked the knowledge of their grief while enduring multiple amputations of García Colón's lower extremities. Id. Accordingly, the Magistrate concluded that the statute of limitations did not start to run at the date proposed by co-defendants since there were issues as the moment that the plaintiffs knew the cause of García Colón's injuries.

*ment* which was joined by co-defendant Orlando López de Victoria and co-defendant Raúl García Rinaldi; (2) co-defendants Guaranty Association of Miscellaneous Insurance on behalf of Hospital Dr. Susoni Inc., Pavia Health Inc, St Paul Fire and Marine Insurance Company's *Supplemental Motion for Summary Judgment* and; (3) co-defendant Orlando López de Victoria's *Supplemental Motion for Summary Judgment* (Docket Nos. 90, 91, 106, 124, 152 and 153).

### IV. Objections

Co-defendants, Guaranty Association of Miscellaneous Insurance on behalf of Hospital Dr. Susoni Inc., Pavia Health Inc, St Paul Fire and Marine Insurance Company filed its *Joined Objection to Second Magistrate Judge Report and Recommendation* (Docket No. 194). Guaranty Association sustains that the core issue of their motions, the statute of limitations, should be dispositive to all co-defendants except for García Rinaldi. Co-defendants sustain that the Magistrate analysis is silent as to plaintiffs' duty of due diligence, which is the issue that co-defendants requested to certify to the Supreme Court.[2] Further, co-defendants sustain that even if they take plaintiffs' proposed date as the starting point of the statute of limitations, the action against them is still time barred. Co-defendants sustain that since plaintiffs admitted that they had knowledge of the injury for which they claim on or around September 30, 1996, and by then they knew that Garcia Colón obtained treatment at Hospital Susoni and Hospital Pavia, they failed their due diligence respon-sibility when they failed to notify these co-defendants as to their claim against them. Accordingly, defendants sustain that plaintiffs' failure to employ due diligence as of to them is inexcusable. Guaranty Association further sustain that the genuine issues in controversy as to material facts are irrelevant to co-defendants' position as a matter of law. Guarantee Association claims that Dr. Ayala's[3] acts or omissions(did he or didn't he provide an opinion as to Garcia Colon's medical treatment) are irrelevant as to plaintiff's duty of due diligence against all co-defendants except Dr. Garcia Rinaldi. Inasmuch that plaintiffs' admitted of their knowledge as of September 30, 1996, their due diligence duty as to all co-defendants started then.

Plaintiffs duly responded to co-defendants' objections to the Magistrate Judge's Report and Recommendation.(Docket No. 196). Plaintiffs sustain that co-defendants misconstrue the legal issues pending before the Court. Further, plaintiff contends that none of the cases cited by co-defendants in their objection discusses the due diligence aspect of the statute of limitations as applied to the doctrine of solidarity as applied to the tolling against joint tortfeasors. Further, plaintiffs aver that co-defendants also misconstrue the Magistrate's Report when they claim that it failed to consider their due diligence argument in the tolling against Dr. Rinaldi's joint tortfeasor. To the contrary, plaintiffs sustain that the Magistrate did consider the argument and dismissed it because she found it to be without merit.

---

2. The Court's determination is still pending.

3. Plaintiffs sustains that Dr. Ayala is an expert that was hired to review and organize the Garcia Colon's medical records. Plaintiffs avers that he did not provide an expert opinion as to any deviation of the standard of care. Co-defendants sustain that plaintiffs knew about her damages and the identity of its author before September, 30, 1996, through the intervention of Dr. Ayala's review of the record. The Magistrate found and the Court agrees that there were still issues as to material fact as to the moment that plaintiffs acquired the required knowledge to trigger the statute of limitations.

Plaintiffs affirm that the Magistrate found that since the interruption against one tortfeasor also tolls the statute of limitations as to all tortfeasors that are solidarily liable, the interruption against García Rinaldi interrupted against all the remaining co-defendants.

Since the co-defendants duly objected to the Magistrate Judge's findings, the Court reviews co-defendants' request for brevis disposition *de novo*. After a careful review of co-defendants' motions for summary judgment and supplemental motions for summary judgment, plaintiffs' oppositions, the parties replies and sur-replies, the pleadings, documents, admissions and depositions on file, the Court sets forth the following factual scenario with all the facts that are adequately supported and uncontested by the parties.

### V. Factual Scenario

Plaintiffs filed the instant complaint on May 4, 2001. Co-plaintiff García Colón received medical care under the services of co-defendant García Rinaldi on co-defendant Hospital Pavia from October 17, 1994 to October 25, 1994, from February 13, 1995 to February 17, 1995. From April 30 1995 to May 10, 1995 she was admitted at co-defendant Hospital Susoni. On May 30, 1995 she was admitted at Hospital Susoni, but on June 12, 1995 she was discharged and transferred to Hospital Pavia, again under the services of co-defendant García Rinaldi. From June 12, 1995 to July 14, 1995 she was again admitted and treated at Hospital Pavia by Dr. Garcia Rinaldi. On August 29, 1995 she was admitted at Hospital Susoni from where she was discharged on September 22, 1995. On Octo-

ber 28, 1995, to March 8, 1996, she was admitted to Hospital Pavia.. On March 10, 1996 to July 18, 1996 García Colón was admitted to Hospital Pavia.

On September 30, 1996, García Colón underwent a graft removal at the "Cardiovascular Center of P.R. and the Caribbean". Plaintiffs admit that they obtained knowledge of the alleged injury from which they claim on or around September 30, 1996. Plaintiffs mailed letters to co-defendant García Rinaldi. Plaintiffs made extrajudicial demands as to Dr. García Rinaldi on August 15,1997, June 11, 1998, May 14, 1999, February 10, 2000 and December 9, 2000.[4] Neither co-defendant López de Victoria, Hospital Susoni or Hospital Pavia were ever notified by plaintiffs of an extra judicial claim as a result of co-plaintiff García Colón's medical interventions.

### VI. Analysis

This is an action based on diversity jurisdiction. Accordingly, local substantive law applies. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 92, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Correa v. Cruisers*, 298 F.3d 13,22 (1st Cir., 2002); *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13 (1st Cir.2000); *Fitzgerald v. Expressway Sewerage Constr., Inc.*, 177 F.3d 71, 74 (1st Cir., 1999).

### A. Statute of Limitations

Co-defendants sustain that plaintiffs had a duty to inquire as to the reasons for co-plaintiff García Colón's damages well before the date claimed of September 30, 1996. Accordingly, plaintiffs failed with her due diligence duty. Hence, co-defen-

---

4. On August 15, 1997 plaintiffs sent a letter received by Dr. Garcia Rinaldi on August 19, 1997; On June 11, 1998 plaintiffs sent a letter received by Dr. Garcia Rinaldi on June 12, 1998; On May, 14, 1999 plaintiffs sent a letter received by Dr. Garcia Rinaldi on May 18,

1999; On February 10, 2000 plaintiffs sent a letter received by Dr. Garcia Rinaldi on February 11, 2000; On December 9, 2000 plaintiffs sent a letter received by Dr. Garcia Rinaldi on December 14, 2000.

dants sustain, that by the time the original extrajudicial demand was made the action was already time-barred. In other words, co-defendants sustain the plaintiff had to be more diligent in finding the extent and nature of co-plaintiff García Colon's injuries.

Plaintiffs, on the other hand, sustain that the statute of limitations did not begin to run until plaintiffs discovered the cause of co-plaintiff García Colón injuries and who caused them, that is, on September 30, 1996. On said date, when Dr. Rodríguez Vega explained to the plaintiffs that the graft was infected and embolizing and that García Rinaldi's failure to remove it was the cause of García Colón's persistent gangrene and complications, that plaintiffs first obtained knowledge that co-defendant García Rinaldi failed to adequately treat co-plaintiff García Colón's post surgical complications and that he was the author of her damages. Until then, plaintiffs relied in García Rinaldi's and Lopez de Victoria opinions as to the cause of her complications. Plaintiffs further sustain that the physicians' representations and assertions as to Garcia Colón's condition were misleading making them unable to acquired the necessary knowledge as to the injury and who caused it.

■ The figure of the statute of limitations responds to the necessity to put an end to the juridical insecurity created when possible judicial actions are indefinitely postponed. *Vega Lozada Y Otros v. Perez & CIA, Inc.,* 135 D.P.R. 746, 753 (1994), *35 P.R. Off Trans.* ____. This figure provides stability to people's rights and properties. Id. *citing Colón Prieto v. Geigel,* 15 *P.R. Off Trans* 313, 326; 115 D.P.R. 232, 243 (1984). In Puerto Rico, pursuant to Article 1802 from the Civil Code, a person is responsible for the damages caused by his fault or negligence. 31 P.R. Laws Ann. § 5141. Torts claims un-

der said statute are subject to a one year statute of limitations. Article 1868 Civil Code of Puerto Rico, 31 P.R. Laws Ann § 5298(2). The period set forth by Article 1868 commences to run at the time that the injured party has knowledge of the injury and of the identity of the tortfeasor. *Tokio Marine and Fire Ins. v. Perez & Cia,* 142 F.3d 1, 3 (1st Cir.1998) *citing Colón Prieto v. Geigel,* 15 *Off Trans* at 326; 115 D.P.R. at 243. *See also Villarini–Garcia v. Hospital Del Maestro,* 8 F.3d 81, 84 (1st Cir., 1993)( "Article 1868 [...] has been construe by the Supreme Court of Puerto Rico to incorporate the so called discovery rule. The one-year period does not begins to run until the plaintiff possesses, information sufficient to permit suit." *Citations omitted.*)

■ The Supreme Court of Puerto Rico has incorporated the liberal civil doctrine as to the moment that the statutory period begins to run. The statute of limitations begins to run from the moment that the injured has knowledge of the injury. This knowledge has been construed as having both, knowledge of the injury and of the person responsible. *Torres v. E.I. Dupont,* 219 F.3d 13, 18(1st Cir., 2000); *Colón Prieto v. Geigel,* 115 D.P.R. at 244; 15 *Off. Trans.* at 330–331. "[T]he concept of 'true knowledge' applies where a plaintiff is actually aware of all the necessary facts and the existence and the likelihood of a legal cause of action." *Rodriguez–Suris v. Montesinos,* 123 F.3d 10, 14 (1st Cir., 1997). In other words, "it is not sufficient for the injured person to be aware of his or her damages but it is also necessary to know the identity of the person responsible for those damages in order to be in a position to demand restitution." *Corey Lanuza v. Medic Emergency Specialties Inc.,* 229 F.Supp.2d 92, 98 (D.P.R.2002). A plaintiff needs to be able to institute the suit, and that requires knowledge of the

existence of the injury and of the person who caused the same. *Rodriguez–Suris v. Montesinos,* 123 F.3d at 15. Notwithstanding, the plaintiff bears the burden of demonstrating that he lacked the necessary knowledge. *Id. citing Torres v. E.I. Dupont,* 219 F.3d at 19; *Kaiser v. Armstrong World Indus., Inc.,* 872 F.2d 512, 516 (1st Cir.1989). See also *Rodriguez–Suris v. Montesinos,* 123 F.3d at 13 *citing Rivera Encarnación v. Estado Libre Asociado De Puerto Rico* 113 D.P.R. 383, 385, 13 *P.R. Off. Trans.* 498, 501 (1982).

◼ In a medical malpractice claim, as in any tort action, the statute of limitations begins to run at the moment that the plaintiff has knowledge of all the required elements in order to be able to initiate his suit, that is, knowledge of the harm and of who cause the same. However, if the lack of knowledge is due to that lack of diligence of the claimant, then the liberal conceptions as to the statute of limitations is not applicable. *Vera Morales v. Bravo Colón,* 2004 P.R.S.C. 30, 2004 WL 540534 (P.R.) *citing Margarita Montañez v. Hospital Metropolitano,* 2002 T.S.P.R. 70, 157 D.P.R. —— (2002).

◼ When addressing the due diligence aspect of this inquiry, the courts should consider if the claimant exercised the diligence that a reasonable man would exercise when confronted with enough signs and external manifestations of the possible damage. At said instance, the statute of limitations begins to run. *Vera*

*Morales v. Bravo Colon,* 2004 P.R.S.C. 30, 2004 WL 540534. However, if a plaintiff is suspicious that she may have been the victim of a tort and her suspicions are assuaged by assurances made by the person who caused the injury, a plaintiff will not be held responsible for failing to pursue her claim more aggressively. *Rodriguez–Suris v. Montesinos,* 123 F.3d at 16 *citing* Colon Prieto v. Geigel, 15 Off Trans at 329–330. In other words, where plaintiff's doctor assures her that her complications have nothing to do with the operation, the plaintiff could not be held to have knowledge of the injury at said moment. *Rodriguez–Suris v. Montesinos,* 123 F.3d at 16. Hence, when the plaintiff reasonably relies upon the doctors representations that here symptoms are not the result of any negligence, the plaintiff is not barred from, the benefit of tolling the limitations period. Id

◼ In the case at bar, the Court agrees with the Magistrate Judge finding that there is a genuine issue of material fact as to the moment in which the plaintiffs acquired the required knowledge in order to trigger the beginning of the statute of limitations. There is a genuine issue as to if and when Dr. Samuel Ayala López might have notified counsel for the plaintiffs as to any finding in Milagros García Colón's medical record that would be proper grounds for a malpractice lawsuit.[5] Accordingly, the Court is precluded from the issuance of summary disposition.

---

**5.** Co-defendants sustain that plaintiffs' attorney had the initial impression of the malpractice case by August 15, 1997, while plaintiffs' opposition supports the contention that Dr. Ayala provided no opinion to plaintiffs or their counsel and solely prepared a summary of the record without submitting any medical opinion as to any deviation from the proper standard of care. Further, plaintiffs' deposition tends to indicate that Dr. Ayala did not review the record with the intent to assess

medical liability. *Magistrate's Second Report and Recommendation* (Docket No. 186, p. 13). Co-defendants submit that a conversation between Mr. Olavarria and Dr. López de Victoria at the hospital would tend to indicate knowledge as to a possible malpractice. On the other hand, plaintiffs aver that the discussion was not as to any medical legal issue but as to their right to know their mother's condition. Plaintiffs sustain that it was not until the intervention of Dr. Rodriguez Vega who

## B. Tolling of Statute of Limitations

Co-defendants, sustain that plaintiff's extrajudicial demand against Dr. Garcia Rinaldi failed to interrupt the statute of limitations for the actions against Dr. López de Victoria, Hospital Susoni and Hospital Pavia. Co-defendants sustain that plaintiffs had the knowledge of the identity of these co-defendants and still chose to make an extrajudicial demand only against García Rinaldi. It is their contention, that plaintiffs' lack of due diligence thus deprived the appearing defendants of their rights to properly defend their interests in this case. Co-defendant Dr. Lopez de Victoria further sustains that since the letters failed to include specific claims against him, they failed to comply with the requirements of an extrajudicial demand. Accordingly, the statute of limitations as to him was never tolled.

Plaintiffs, however, aver that the extrajudicial demand made to co-defendant García Rinaldi tolled the statute of limitations as to all co-defendants who are jointly liable. Plaintiffs sustain that in accordance with the solidarity doctrine, the interruption against one tortfeasor interrupts against all tortfeasors who are solidarily responsible.

■■■ The one year statute of limitations may be tolled under certain circumstances. 31 P.R. Laws Ann. § 5303.[6] An extrajudicial demand is one of said circumstances. For an extrajudicial demand to have the tolling effect, the same must meet certain requirements. Article 1873 of the Puerto Rico Civil Code governs the extra-

judicial interruption of the limitations period. *Tokyo Marine and Fire Ins.*, 142 F.3d at 4; 31 P.R. Laws Ann. § 5303. Extrajudicial tolling, pursuant to Article 1873, restarts the statute of limitations on the date the extrajudicial claim is made. Id. However, to effectively toll the statute of limitations said extrajudicial claim has to be made before the statute of limitations expires, the same must be performed by the holder of the right to the action whose limitation period is sought to be tolled, the means employed to make the claim must be adequate and there should be identity between the right claimed and the right affected by the statute of limitation. *Galib Frangie v. El Vocero de P.R.*, 138 D.P.R. 560, 567 (1995); 38 *P.R. Off. Trans.* ___. Should the statute of limitations be effectively interrupted, the full period begins anew. *Tokyo Marine and Fire Ins.*, 142 F.3d at 4. The plaintiff bears the burden of proving that the statute of limitations has been tolled. Id. Finally, the interruption of the tolling period against one co-defendant tolls the period for all defendants who are jointly liable. *Tokyo Marine and Fire Ins.*, 142 F.3d at 4; *Arroyo v. Hospital de la Concepcion*, 130 D.P.R. at 607–608, 1992 WL 755630.

■■■ The extrajudicial demand against one tortfeasor interrupts the statute of limitations for all tortfeasors who are jointly liable. In other words, if between the co-defendants there is a joint and several liability, the interruption against one the tortfeasors interrupts for all others. It is already clear that the Court is in no posi-

found the infected graft in the duodenum and attributed the same, to Dr. Garcia Rinaldi's lack of proper post medical care, that plaintiffs acquired the required knowledge in order to trigger the statute of limitations period. *Id.* Further, García Rinaldi and López de Victoria alleged reassurances constituted proper grounds to hold that plaintiffs could not have

been held responsible of having the required knowledge for the statute of limitations to begin to run.

6. "Prescription of the actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor and by any act of acknowledgment of the debt by the debtor."

tion to issue a summary judgment pursuant to co-defendant's argument that the action was time barred when the plaintiff issued their extrajudicial demand against García Rinaldi because there are genuine issues of material facts as to the moment in which the plaintiffs acquired the knowledge required for the statute of limitations to begin to run. However, the co-defendants aver that even using the date of September 30, 1996, date proposed by the plaintiffs, as the starting point of the statutory period, the action is still time barred for the all co-defendants except to García Rinaldi. Co-defendants sustain that there is no case law by the Supreme Court of Puerto Rico as the specific facts of the instant case, **where the plaintiff had knowledge of the identity of all the alleged tortfeasors and chose the make an extrajudicial demand against only one of them.** Co-defendants allege that plaintiffs' course of action is contrary to the requirement of due diligence [7] that the Supreme Court of Puerto Rico has imposed over the plaintiffs.[8]Co-defendants sustain that although plaintiffs had knowledge of the identity of Hospital Susoni, Hospital Pavia and Dr. López de Victoria since before making their extrajudicial demand against Dr. García Rinaldi, none of the named co-defendants were notified of any extra judicial claim against them as a result of co-plaintiff García Colón's medical treatment. Co-defendants sustain that this issue has not been expressly resolved by the Supreme Court of Puerto Rico. The Court disagrees.

In *Sanchez Montalvo v. Autoridad de Puertos,* 2001 P.R.S.C. 30, 2001 WL 243246, Opinion issued on March 7, 2001, the Supreme Court confronted a situation similar to the one before the Court. Although on said occasion the issue was presented in a motion to dismiss where the standard is different that the standard for a summary judgment, the Court finds that the determination of the Supreme Court may be applied in the instant case. The Court explains.

The fact of the case are as follows:

On August 30, 1993, the plaintiff arrived at the Luis Muñoz Marín Airport from

---

7. It has been established that statute of limitations includes a due diligence requirement. That is, that although the statute of limitations does not begin to run until the harmed person has the knowledge of that harm suffered and the person responsible, "[i]gnorance may not be due to the negligence or carelessness of the interested party." *Corey Lanuza v. Medic Emergency Specialties Inc.,* 229 F.Supp. at 98. citing *Rodríguez–Suris v. Montesinos,* 123 F.3d at 16. Hence, in order to determine the point at which a plaintiff should be held responsible for the required level of awareness of whether another particular person was an author of the injury, a court looks to 'whether plaintiff knew or, with the degree of diligence required by law, would have known whom to sue.' " *Id.* at 16 *quoting Kaiser v. Amstrong World Indus.,* 872 F.2d 512, 516 (1st Cir. 1989). See also *Vega Lozada v. Perez & CIA,* 135 D.P.R. 746, 755, 1994 WL 909638 (1994), 35 *P.R. Off Trans.* ___; *Lopez v. Autoridad de Carreteras,* 133 DPR at 256, 1993 WL 839981, 33 *P.R. Off Trans.* ___.

8. Still pending before the Court is co-defendant Guaranty Association of Miscellaneous Insurance of Puerto Rico's (Association) *Petition for Certification of Issue of Law* (Docket No. 166). Guarantee Association sustains that the statute of limitations was not interrupted by plaintiff against any other defendant that Dr. Garcia Rinaldi. Co-defendants requested from the Court to certify the following question to the Supreme Court of Puerto Rico: If plaintiff's extrajudicial claim against a joint tortfeasor among many, can toll the statute of limitations indefinitely against other tortfeasors whose identity and participation in the events of a case was already known, or should have been known to plaintiff, but who did not receive an extrajudicial claim as well before the complaint was finally filed and within the statute of limitations, notwithstanding plaintiff's duty to investigate and/or of due diligence recognized in *Lopez v. Autoridad de Carreteras,* 133 D.P.R. 243 (1993).

Orlando Florida, in a flight from American Airlines. On her arrival to the baggage claim area, she slipped and fell. The floor was wet due to rain. That same day, she filed a claim with the Ports' Authority. Soon after, the Ports Authority informed the plaintiff that the case was referred to their insurance company. On October 20, 1993, plaintiff's attorney sent a letter to the insurance company informing them that he was plaintiff's legal counsel. He included on the letter the date of the accident and the fact that plaintiff was receiving medical treatment. For the next months the insurance company and plaintiff's legal representative, exchanged letters. The insurance company informed that they were conducting an investigation of the incident and needed to interview the plaintiff. On January 7, 1994, the insurance company sent a letter informing that they preliminarily had concluded that the accident occurred in an area which was under the control of American Airlines, hereinafter American. They further informed the plaintiff that they referred the claim to American and provided plaintiff's legal counsel with the name and address of American's insurance company. They suggested the plaintiff to direct any claim directly with American. Notwithstanding, Ports' Authority's insurance company was still interested in interviewing the plaintiff. On October 25, 1995, plaintiff's legal counsel sent another letter to the Port's Authority's insurance company, specifying the suffered damages and their value. On December 19, 1994, the insurance company sent another letter to plaintiff's counsel informing that they concluded that the place of the fall was under the control of American Airlines. Accordingly, plaintiff's counsel was informed that the Ports' Authority would not respond for the claim, nor it would offer any kind of compensation. Plaintiff was informed that the lease contract among the Ports' Authority and American Airlines contained a "Hold Harmless Agreement" and, accordingly, the Port's Authority insurance company sent American's insurance company plaintiff's claim. On August 10, 1995, after being notified that the Ports' Authority would not be responsible for the accident, plaintiff's counsel sent a letter to Mr. Ecklund the claim adjuster at American's insurance company. The letter included information as to the accident and the damages. On December 18, 1995, plaintiff filed her complaint against the Port's Authority and American Airlines, she claimed that co-defendants were jointly liable and solidary responsible for her damages. American filed a Motion to Dismiss. American sustained that the action was time barred.

The Supreme Court first determined that plaintiff's letter of October 20, 1993 complied with all the requirements of an extrajudicial demand and, accordingly, effectively tolled the statute of limitations against the Ports' Authority. After the first letter there were several letters that, although not all of them had all the requirements of an extrajudicial claim, the Court found that effectively tolled the statute of limitations since once the statute of limitations is interrupted it is not necessary that the plaintiff repeats previously discussed matters, it is only required that from the notification it can be inferred that the plaintiff has not intention of abandoning his rights.

The Court noted that from the facts of the case the plaintiff **knew** that American could be liable since the day of the accident, or at least should have know since said date due to the fact that the accident was in the baggage claim of said airline. Further, even if the Court accepts that plaintiff did not know since said day, the Court concluded that the plaintiff definitely knew, by January 7, 1994, that Ameri-

can could be liable since the Port's Authority's insurance company informed her. The Court then stated that from those facts the plaintiff failed to interrupt the statute of limitations for American. **However**, the Court concluded that since at the motion to dismiss stage they had to accept plaintiff's allegations as true, the Court had to assume that, as alleged, American and the Ports' Authority were solidarily responsible for plaintiff's damages and since the cause of action against the Port's Authority was not time barred due to the effective tolling of the statute of limitations through the extrajudicial claim and they had to assume that American and the Port's Authority were joint and severally responsible, the tolling of the statute of limitations of the action against the Port's Authority equally tolled the prescriptive period of the action against American.

Hence, it follows that if between the co-defendants there is a relationship of joint and several liability, the effective tolling of the statute of limitations against the one of the co-defendants, interrupts the statute for all of them, **even when the plaintiff had knowledge of the existence and identity of the other co-defendants and chose not to toll it.**

In the instant case, as in *Sánchez Montalvo v. Autoridad de los Puertos et al.*, the plaintiffs knew of the identity of all co-defendants and still chose to send her extrajudicial claim to one of them. Hence, should the Court find that co-defendants are joint and severally responsible, the extrajudicial claim made against García Rinaldi effectively interrupted the statute of limitations against all of the joint tortfeasors. Accordingly, the Court must determine if in fact said joint and several liability exists.

### C. Joint Liability

In Puerto Rico, when a negligent act is caused by the actions of more than one person, each person is a joint tortfeasor and is liable in full to the plaintiff for the harm caused. *Tokio Marine and Fire Ins.*, 142 F.3d at 6; 31 P.R. Laws Ann. § 5131. The negligent act must be the adequate cause of the harm. Id. at 7 n. 5. Under Puerto Rico law, joint tortfeasors are joint and severally liable. *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596, 604 (1992); 30 *P.R. Off. Trans.* ___ citing *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 705–706 (1987); 18 *P.R. Off. Trans.* 808, 814–814. This solidary responsibility imposed to the joint tortfeasors protects more effectively the victim of a tort. *Arroyo v. Hospital La Concepción*, 130 D.P.R. at 604.

Liability among tortfeasors is indistinguishable from the contractual solidarity. "The essential feature of solidarity is that the solidary debtors are jointly responsible for the same obligations." *Tokyo Marine and Fire Ins.*, 142 F.3d at 5. Accordingly "joint tortfeasors, like solidary debtors, are jointly liable for the same obligation". Id at 7; 31 P.R. Laws Ann § 3101. *Arroyo v. Hospital La Concepción* 130 D.P.R. 596; 30 Off Trans.___. Accordingly, the Supreme Court of Puerto Rico has held that Article 1874, 31 PR Laws Ann. § 5304, as to the effects of the interruption of the statute of limitations in solidary debtors, applies to joint tortfeasors. Consequently, the interruption of the statute of limitations as to one tortfeasor interrupts the term as to all tortfeasors. In other words, since solidarity is based on the premise that there is one obligation shared by all the debtors, *Tokyo Marine and Fire Ins.*, 142 F.3d at 6, the interruption of the tolling period against one co-defendant tolls the period for all defendants who are jointly liable. *Id.* at 4; *Arroyo v. Hospital de la Concepción*, 130 D.P.R. at 607–608, 1992 WL 755630. In the same manner, an ex-

trajudicial demand, which is another of the prescribed ways to interrupt the statute of limitations, 31 P.R. Laws Ann. § 5303, would toll the statute of limitations as to all defendants who are jointly and severally liable.

■ The hospital's liability depends of the relationship that said hospital has with the patient. The Supreme Court of Puerto Rico has distinguished between two different situations. *Márquez Vega v. Martínez Rosado*, 116 D.P.R. 397, 1985 WL 301900 (1985); 16 *P.R.Off. Trans.* 487. First, the Supreme Court addressed the situation where the patient attends directly to the hospital for medical help and the hospital provides him with the doctors. In said case, the hospital is jointly and severally liable with the doctor, of the possible negligence incurred by the second. *Id.* at 406–407, 1985 WL 301900; at 497. The Supreme Court further noted that the relationship of the doctor with the institution was not a relevant factor. That is, the Supreme Court found that in the described situation where the patient seeks for medical help directly at the institution, it did not matter if the doctor who was negligent was an employee of the institution, had privileges to work at the institution or was part of the consulting staff of the institution. *Id.*

■ On the other hand, if the patient attends directly to the doctor's private office, agrees with the doctor to receive certain treatment in certain hospital following doctors' recommendation, the hospital would not be liable for the negligent act of the doctor. *Id.* at 408–409, 1985 WL

301900; at 499. However, in this situation the hospital would be liable for its own negligence in the selection of the personnel. *Id.* at 411–412, 1985 WL 301900; 501–502.[9] A hospital would be jointly and severally liable for a doctors' negligence if it fails to adequately monitor the work of the physicians with hospitals privileges and if it fails to intervene, when possible in the fact of and obvious act of medical malpractice. *Daniels Recio v. Hospital Del Maestro Inc.*, 109 F.3d 88, 92 (1st Cir., 1997) *citing Marquez Vega v. Martínez Rosado* 116 D.P.R. at 409–410, 1985 WL 301900, 16 *P.R. Off. Trans.* 500–501. In order for the Hospital to be obligated to intervene, the malpractice has to be very obvious. *Daniels Recio v. Hospital Del Maestro Inc.*, 109 F.3d at 92.

■ In the instant case, the plaintiffs alleged that Hospital Susoni and Hospital Pavia are solidary responsible with García Rinaldi. Accordingly, the extrajudicial demand made upon García Rinaldi tolled the statute of limitations as to the two hospitals. Hospital Pavia, on the other hand, sustains that the hospital cannot be considered as a joint tortfeasor. Pavia avers that when the patient, as in the instant case, requests health care from the physician directly and agrees upon treatment to a hospital upon recommendation of said physician, as a rule, the hospital should not be held liable for the physicians malpractice. Pavia avers that plaintiffs nor their expert has ever questioned the professional training and certification of García Rinaldi. Moreover, Pavia recruited García Rinaldi within its staff, precisely because of his credentials. Hence, Pavia affirms

9. The hospitals have the responsibility of guarding for the health of its patients. This responsibility includes a duty to exercise a careful selection of the doctors that have a privilege to use the hospital facilities. The hospital has to demand from said professionals take continued education courses and courses as to new technological advances. Further, the hospital must monitor their work and intervene, when possible, in a obvious act of medical malpractice. In cases where the institution determines that certain doctor has several medical malpractice acts, the hospital must suspend the doctors' privileges Id., 409.

that the hospital did not fail in its responsibility "in eligendo". The hospital further alleges that neither they failed in their responsibility "in vigilando."

The Court agrees that the hospital is not necessarily a joint tortfeasor. However, the record is devoid of evidence that neither supports or contradicts Pavia's contention. It is undisputed that the first time that co-plaintiff García Colón went to Hospital Pavia, it was by the recommendation of García Rinaldi. However, there are allegations that Plaintiff returned to the Hospital's emergency room where she allegedly did not received adequate attention. Pavia has failed to placed the Court in position to make a determination as to its responsibility, in the instant case. Lack of evidence to the contrary, and since this is a claim pursuant to Article 1802, where joint and several liability among tortfeasors may be legally imposed, *Arroyo v. Hospital La Concepción*, 130 D.P.R. at 603, 1992 WL 755630 30 *P.R. Off. Trans.___*, the Court, at this moment, presumes that Hospital Pavia is a joint and several tortfeasor, and as such, is solidarily responsible to the plaintiffs. Since the plaintiffs effectively tolled the statute of limitations as to co-defendant García Rinaldi, pursuant to *Sanchez Montalvo v. Autoridad de Puertos et al*, the statute of limitations was tolled against Hospital Pavia as well. The same reasoning applies to Hospital Susoni, although said hospital failed to allege that his liability was other than solidary.

■ ] López de Victoria's allegation that the extrajudicial demand made upon García Rinaldi, failed to contained allegations against him also fails. In *Sanchez Montalvo v. Autoridad de Puertos et al, supra,* the plaintiff also failed to make an allegation against American in her extrajudicial claim sent to the Port's Authority. However, the Court reasoned that since they were solidarily liable (the Court accepted said allegation as true because they where at a motion to dismiss stage) the effective tolling of the statute of limitations against one co-defendant could be imposed against the other. Physicians can be found jointly and severally liable if their multiple acts or omissions together are responsible for the harm. *Riley v. Rodriguez de Pacheco*, 119 D.P.R. 762, 808, 1987 WL 448254, 19 *P.R. Off. Trans* 806 (1987). López de Victoria claims that there is no joint liability because the acts were diverse in time and nature and there is lack of solidarity among the physicians who treated García Colón. However, López de Victoria failed to present any evidence to demonstrate that he is not a joint and several tortfeasor. Accordingly, the effective tolling of the statute of limitations against García Rinaldi also interrupted the prescriptive term as to López de Victoria.

### VII. Conclusion

For the reasons aforementioned, co-defendants', *Motion for Summary Judgment* (Docket No. 90) joined by co-defendant, Orlando Lopez de Victoria (Docket No. 91) and co-defendant, Raul Garcia Rinaldi (Docket No. 106) and co-defendants *Supplemental Motion for Summary Judgment.* (Docket No. 124 and 152) requesting the dismissal of the instant claim are hereby **DENIED.**

**IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION

VELEZ–RIVE, United States Magistrate Judge.

### INTRODUCTION

On February 17, 2004, co-defendants Dr. Orlando López de Victoria and Guaranty Association of Miscellaneous Insurance of Puerto Rico, in the interest of Hospital

Pavia, Hospital Susoni and Saint Paul Fire and Marine Ins. Co., filed a Motion for Summary Judgment, together with the Statement of Uncontested Material Facts and exhibits attached thereto. (Docket No. 90 and 91). Plaintiffs filed their timely Opposition to Motion for Summary Judgment. (Docket No. 96). Additional replies and sur-replies were considered and they are summarily discussed below as other related issues and in footnote two (2). The court has referred the above and all related and pending motions to this Magistrate Judge for Report and Recommendation (Docket No. 121).

## BACKGROUND

On May 4, 2001, plaintiffs filed their complaint under diversity jurisdiction, pursuant to Article 1802 of the Civil Code of Puerto Rico, alleging medical malpractice incurred by co-defendants for being jointly and severally liable to plaintiffs. Co-plaintiff Milagros García had been under the care of co-defendant Dr. Raúl García Rinaldi until September 26, 1996. Co-plaintiff required more than one amputation of her legs upon post-operative complications for an infected aortofemoral by-pass graft. Co-defendant Dr. López de Victoria treated co-plaintiff Milagros García and was consulted by her relatives in regard to the right inguinal wound that was draining serous sanguineous fluids. Dr. López de Victoria informed them that the complications appeared to be caused by a blood illness. Up to the time said co-plaintiff was discharged and transferred under the care of another cardiovascular surgeon at the Cardiovascular Center of Puerto Rico, plaintiffs claim they had reasonably relied on the good faith, capacity, and medical opinions of co-defendants Dr. García Rinaldi and/or Dr. López de Victoria, as to the effect that co-plaintiff's post-operative cardiovascular complications were caused by other conditions and were not related to the surgical procedures performed by defendant Dr. García Rinaldi.

In plaintiffs' statement of uncontested facts, they included evidence of their extrajudicial claims which they allege tolled the limitation of time on their malpractice claim. They also submitted legal memoranda claiming that co-defendants herein are to be considered joint tortfeasors for which the claims as to them were also properly tolled.

Co-defendants Dr. López de Victoria and Guaranty Association of Miscellaneous Insurance of Puerto Rico submit in their respective motions for summary judgment that plaintiffs' claim is time barred by the applicable statute of limitations since their extrajudicial claims to another tortfeasor, Dr. García Rinaldi, did not toll the limitation period as to them.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When from the face of the complaint the statute of limitations becomes an issue, plaintiffs, non-movant herein, have the burden to show under the above predicament that either tolling ensues as to their claim or that they lacked sufficient knowledge of same. *Fragoso v. López*, 991 F.2d 878, 887 (1st Cir.1993) (burden of proof to show lack of knowledge is on the plaintiff who sues more than one year after the event); *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir.1987); *Villarini–García v. Hospital Del Maestro, Inc.*, 8 F.3d 81,

87 (1st Cir.1993). Still, the court should examine the record "in the light most favorable to the party opposing the motion". *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

## LEGAL ANALYSIS

### I. LIMITATION OF MALPRACTICE ACTIONS.

Under Puerto Rico law, an action for damages for negligence must be commenced within one year of its accrual. 31 P.R. Laws Ann. § 5298(2). The Puerto Rico Supreme Court has construed this provision as incorporating a discovery rule. *Villarini–Garcia*, 8 F.3d at 84. Thus, a claim accrues, and the one year period starts to run, not at the time of the injury, but upon the discovery by the injured party of the injury and of its author. *Espada v. Lugo*, 312 F.3d 1, 5 (1st Cir.2002) (*citing Tokyo Marine & Fire Ins. Co. v. Pérez & Cia., De Puerto Rico, Inc.*, 142 F.3d 1, 3 (1st Cir.1998)).

Title 31 of the Laws of Puerto Rico Annotated, § 5298, provides that:

The following prescribe in one year: ... Actions to demand civil liability for grave insults of calumny, and for obligations arising from fault or negligence ... from the time the aggrieved person had knowledge thereof. Art 1868 (1930).

The one-year statutory period may be tolled under appropriate circumstances. 31 P.R. Laws Ann. § 5303 ("Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor.").

Once a plaintiff acquires knowledge of the fact of his/her injury, a mistake of law as to the time of its accrual should not be allowed to resurrect a time-barred cause of action. *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979) (in medical malpractice case, so long as the plaintiff is aware of "the critical facts that he has been hurt and who has inflicted the injury," the statute of limitations is triggered). *See* Sheldon Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983*, § 9.04 at 253 (*commenting* that the medical malpractice discovery accrual rule "is also the rule in § 1983 cases"). *See also Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 354 (1st Cir.1992).

### A. Time frame when plaintiffs acquired knowledge.

Co-defendants submit in their motion for summary judgment that co-plaintiff Milagros García had the duty to inquire into the reasons for her health injury well before the date claimed of September 30, 1996, and that by the time extrajudicial claims were made the action was already time-barred. Co-defendants assert that plaintiffs should have been diligent in finding the extent and nature of co-plaintiff Milagros García's injuries due on account of the graft surgery and the quality of medical care provided.

In opposition, plaintiffs submit that the claim in this case accrued not at the time of the injury but when plaintiffs discovered the cause of the injury and who committed it pursuant to *Villarini–Garcia*, 8 F.3d at 84. It is also alleged that during the time the medical-patient relationship persisted, the physicians' representations and assertions as to the patient's condition were misleading, making them unable to acquire the necessary knowledge of the injury and who was responsible, for which tolling was appropriate.

Under the discovery rule encompassed by § 1802, a claim does not accrue when a

person has merely a hint, suspicion or rumor of the claim, but once a duty to inquire into the existence of the claim rises. *McIntyre v. United States*, 367 F.3d 38, 2004 WL 1045544 (1st Cir.2004).

On the basis of the above premises, it becomes evident that there are genuine issues of fact, resting on credibility determinations, as to the moment when plaintiffs acquired knowledge of Milagros García's damages. There is also controversy as to the representations and assertions allegedly made by the physicians which prevented plaintiffs from acquiring said knowledge. Therefore, summary disposition is not appropriate and co-defendants' request for summary judgment should BE DENIED.

### B. Article 1802—joint tortfeasors.

Under Article 1802 of the Puerto Rico Civil Code, when the negligent acts of more than one person have adequately caused a harm, each such person is a joint tortfeasor who is liable in full to the plaintiff for the harm caused. *Tokyo Marine & Fire Ins. v. Pérez & Cia.*, 142 F.3d 1, 4 (1st Cir.1998).

Under Article 1802, a person is liable for the harm he or she may have negligently caused. In order for liability to attach, the negligent act must be the "adequate cause" of the harm. Adequate cause, a concept similar to proximate cause, permits more than one person to be found to have "caused" the harm. *Id.; see also Marshall v. Perez Arzuaga*, 828 F.2d 845, 847 (1st Cir.1987).[1]

Co-defendants claim that there is no joint liability because the acts were diverse in time and nature and there is a lack of solidarity among the physicians who treated co-plaintiff. Co-defendants contend that their identity was known to plaintiffs since the outset and they still pursued their extrajudicial claim only as to co-defendant García Rinaldi, who is not a party to this summary request.

Co-defendants' claims are without merit. Under solidarity of joint tortfeasors, the Puerto Rico Supreme Court has held that physicians were jointly and solidarily liable for their multiple acts, omissions and events that combined to cause them, although their actions were not contemporary but consecutive. *Riley v. Rodriguez De Pacheco*, 119 D.P.R. 762, 19 P.R. Offic. Trans. 806, 851–852 (1987); and *Cruz v. Centro Medico de Puerto Rico*, 113 D.P.R. 719, 744, 13 P.R. Offic. Trans. 931, 960–962, 1983 WL 204245 (1983) (*holding* injury in *solidum* by emergency room physicians and orthopedists who provided treatment on different days at different locations).

Accordingly, if co-defendants are eventually found liable in this case, they will be joint tortfeasors liable each in full to plaintiffs for the harm caused.

### C. Tolling through extra-judicial claim as to joint tortfeasors.

As to joint tortfeasors, the statute of limitations is tolled when a claim is filed against another tortfeasor and the interruption of the tolling period against one defendant tolls the period for any defendant who is solidarily liable with the first. *See Tokyo Marine*, 142 F.3d at 4. The extrajudicial tolling under 31 L.P.R.A. § 5303 would restart the statute of limitations on the date of the extrajudicial claim and once successfully interrupted, the full period begins to run again. *See Díaz De Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471,

---

1. See *Ortiz Torres v. K & A Developers, Inc.*, 136 P.R. Dec. 192, 1994 WL 909260, at *3 (May 25, 1994); *Sociedad De Gananciales v. González Padín*, 117 P.R. Dec. 94, 1986 WL 376809 (1986); *Jiménez v. Pelegrina Espinet*, 112 P.R. Dec. 700, 1982 WL 210615 (1982).

475, 110 P.R. Offic. Trans. 597, 606, 1980 WL 138494 (1980) ("The letter sent on April 15, 1974 ... was an extrajudicial claim. On that date, a new one-year period of limitations began to run."); *see also González García v. Puerto Rico Elec. Power Authority*, 214 F.Supp.2d 194, 201 (D.Puerto Rico 2002).

Insofar as the extrajudicial claims, plaintiffs submitted several specific claims made through letter to Dr. García Rinaldi which they allege tolled the limitation of their actions as to those co-defendants who are jointly liable. Furthermore, plaintiffs aver that the limitation statute was tolled because it is not sufficient to have notice of the ill effects after the surgery and post-surgery complications, more so on account of co-defendants' representations and/or misrepresentations of the nature of her conditions.[2] It was not until the surgery performed by a third party that plaintiffs claim they were informed that the graft infection, the embolizing, and its resulting persistent gangrene and complications had been caused by inadequate post-surgical treatment of defendant García Rinaldi and that co-defendants García Rinaldi and López de Victoria were most reasonably the ones at fault for the recently discovered injury.

Having discussed above that knowledge of damages and those liable thereof cannot be disposed summarily, for purposes of this summary judgment we will assume that plaintiffs' claim accrued by September 30, 1996.

There is no controversy that plaintiffs made extrajudicial claims to co-defendant Dr. García Rinaldi on August 15, 1997, June 11, 1998, May 14, 1999, February 10, 2000, and December 9, 2000. Upon filing of their judicial claim, plaintiffs claimed defendants were solidarily liable for co-plaintiff Milagros García's damages.

These letters constituted an extrajudicial claim, tolled the statute of limitations, and restarted the one-year time period. The new one-year period began upon the receipt of each of the extrajudicial claim by co-plaintiff to Dr. García Rinaldi. Thus, the extrajudicial tolling under 31 L.P.R.A. § 5303 that has already been determined in regard to alleged tortfeasor García Rinaldi would restart the statute of limitations on the date of the extrajudicial claim and once successfully interrupted, the full period begins to run again. *Díaz De Diana*, 110 D.P.R. at 475, 1980 WL 138494.

The prescription period was tolled as to all the joint tortfeasors, including co-defendant Dr. López de Victoria, as "the interruption of the prescription against one defendant also tolls the statute against any other defendants who are solidarily liable with the first." *Tokyo Marine*, 142 F.3d at 5 (citing 31 L.P.R.A. § 5304 "[i]nterruption of prescription of actions in joint obligations equally benefits or injures all the credits or debtors." (official translation 1991); *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596, 1992 WL 755630, (1992)); *Serrano Strubbe v. Hernandez Plana*, 2002 WL 32006329, *12 (D.Puerto Rico 2002).

Since the solidarity doctrine allows for the timely inclusion of a solidary tortfeasor, such as co-defendant Dr. López de Victoria, as long as the original claim is considered to be timely, the subsequent addition of an alleged tortfeasor would not be considered to be time barred.

---

**2.** Plaintiffs aver that codefendants had represented her complications to be caused either by a heart illness, a blood illness or a malignancy in the duodenum, up until September 30,1 996, when through treatment by a third party they found that the injuries had been caused by an infected graft and improper post-surgical treatment by codefendants.

As such, co-defendant Dr. López de Victoria's claim of estoppel based on plaintiffs' extrajudicial claim against a tortfeasor, is not substantiated and is opposed by the solidarity and joint liability expressed by § 1802 statute and by similarly situated jurisprudence above discussed.

Accordingly, co-defendants' summary judgment request as to this matter should BE DENIED.

## II. OTHER RELATED ISSUES

Co-defendant López de Victoria requested an extension of time for additional discovery. The Court has already ruled as to time limitations for dispositive motions in this case. All subsequent replies, sur-replies, supplemental motions, their oppositions and responses thereto properly submit the parties' positions as necessary to resolve the summary judgment issues.[3] Accordingly, the extension of time for additional discovery should BE DENIED.[4] If the Court, however, allows the extension, any subsequent filing should be considered as part of any opposition to this report and be dealt accordingly.

## CONCLUSION

Considering the above discussed, it is recommended that co-defendants' Motions for Summary Judgment **BE DENIED**.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.

May 24, 2004.

---

3. **Docket No. 131**
   RESPONSE in Opposition to Motion to Compel filed by all plaintiffs.
   **Docket No. 128**
   MOTION to Stay Response and Opposition.
   **Docket No. 127**
   REPLY to Response to Motion Plaintiffs' Motion to Strike filed by Guaranty Association of Miscellaneous Insurance of Puerto Rico.
   **Docket No. 126**
   MOTION to Compel Disclosure of Witness' Identity and, MOTION for extension of time to File Supplemental Brief in Support of Motion for Summary Judgment filed by Jose L. Gonzalez–Castaner on behalf of Orlando Lopez–de–Victoria.
   **Docket No. 125**
   MOTION to Strike Re: 124 Supplemental Motion [sic] Memorando of Law in Support Summary Judgement.
   **Docket No. 124**
   Supplemental Motion [sic] Memorando of Law in Support Summary Judgement.

4. **Docket No. 131**
   RESPONSE in Opposition to Motion to Compel filed by all plaintiffs.
   **Docket No. 128**
   MOTION to Stay Response and Opposition.
   **Docket No. 127**
   REPLY to Response to Motion Plaintiffs' Motion to Strike filed by Guaranty Association of Miscellaneous Insurance of Puerto Rico.
   **Docket No. 126**
   MOTION to Compel Disclosure of Witness' Identity and, MOTION for extension of time to File Supplemental Brief in Support of Motion for Summary Judgment filed by Jose L. Gonzalez–Castaner on behalf of Orlando Lopez–de–Victoria.
   **Docket No. 125**
   MOTION to Strike Re; 124 Supplemental Motion [sic] Memorando of Law in Support Summary Judgment.
   **Docket No. 124**
   Supplemental Motion [sic] Memorando of Law in Support Summary Judgement.

## SECOND REPORT AND RECOMMENDATION

The issues raised by defendants in their request for summary judgment are once again before this Magistrate Judge. A report and recommendation was issued on May 24, 2004 (Docket No. 135). Thereafter, on May 26, 2004, the court allowed defendants, the filing of supplemental motions to their summary judgment (Docket No. 136). Plaintiffs' opposition to the extension of time and to strike upon defendants' failure to properly object, oppose or appeal the report and recommendation was denied by the Court (Docket No. 140). After having deposed Dr. Samuel Ayala López on June 11, 2004, defendants Guaranty Association of Miscellaneous Insurance, in the interest of Hospital Pavía ("Guaranty Association"), in lieu of an opposition to the report and recommendation, has once more submitted summary disposition on similar grounds, among others, that plaintiffs' action should be considered time barred. The Court ordered on August 5, 2004 (Docket No. 176) this Magistrate Judge to reconsider the Report and Recommendation in light of the supplemental motions filed.

Having reviewed all documents and arguments raised by defendants, as well as further considering that codefendant García Rinaldi's summary request was not previously adjudicated (Docket No. 124, 152), this Magistrate Judge finds that no significant new issues were raised that would entail a different result on the previous findings and proposed recommendation that summary disposition, as requested by the defendants, be denied. Thus, for all legal purposes, the report and recommendation issued on May 24, 2004, is hereby reiterated and made an integral part of this reconsideration as follows:

## REPORT AND RECOMMENDATION

### INTRODUCTION

On February 17, 2004, co-defendants Dr. Orlando López de Victoria and Guaranty Association of Miscellaneous Insurance of Puerto Rico, in the interest of Hospital Pavía, Hospital Susoni and Saint Paul Fire and Marine Ins. Co., filed a Motion for Summary Judgment, together with the Statement of Uncontested Material Facts and exhibits attached thereto. (Docket No. 90 and 91). Plaintiffs filed their timely Opposition to Motion for Summary Judgment. (Docket No. 96). Additional replies and sur-replies were considered and they are summarily discussed below as other related issues and in footnote two (2). The court has referred the above and all related and pending motions to this Magistrate Judge for Report and Recommendation (Docket No. 121).

### BACKGROUND

On May 4, 2001, plaintiffs filed their complaint under diversity jurisdiction, pursuant to Article 1802 of the Civil Code of Puerto Rico, alleging medical malpractice incurred by co-defendants for being jointly and severally liable to plaintiffs. Co-plaintiff Milagros García had been under the care of co-defendant Dr. Raúl García Rinaldi until September 26, 1996. Co-plaintiff required more than one amputation of her legs upon post-operative complications for an infected aortofemoral by-pass graft. Co-defendant Dr. López de Victoria treated co-plaintiff Milagros García and was consulted by her relatives in regard to the right inguinal wound that was draining serous sanguineous fluids. Dr. López de Victoria informed them that the complications appeared to be caused by a blood illness. Up to the time said co-plaintiff was discharged and transferred under the care of another cardiovascular surgeon at the Cardiovascular Center of Puerto Rico,

plaintiffs claim they had reasonably relied on the good faith, capacity, and medical opinions of co-defendants Dr. García Rinaldi and/or Dr. López de Victoria, as to the effect that co-plaintiff's post-operative cardiovascular complications were caused by other conditions and were not related to the surgical procedures performed by defendant Dr. García Rinaldi.

In plaintiffs' statement of uncontested facts, they included evidence of their extrajudicial claims which they allege tolled the limitation of time on their malpractice claim. They also submitted legal memoranda claiming that co-defendants herein are to be considered joint tortfeasors for which the claims as to them were also properly tolled.

Co-defendants Dr. López de Victoria and Guaranty Association of Miscellaneous Insurance of Puerto Rico submit in their respective motions for summary judgment that plaintiffs' claim is time barred by the applicable statute of limitations since their extrajudicial claims to another tortfeasor, Dr. García Rinaldi, did not toll the limitation period as to them.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When from the face of the complaint the statute of limitations becomes an issue, plaintiffs, non-movant herein, have the burden to show under the above predicament that either tolling ensues as to their claim or that they lacked sufficient knowledge of same. *Fragoso v. López*, 991 F.2d

878, 887 (1st Cir.1993) (burden of proof to show lack of knowledge is on the plaintiff who sues more than one year after the event); *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir.1987); *Villarini–Garcia v. Hospital Del Maestro. Inc.*, 8 F.3d 81, 87 (1st Cir.1993). Still, the court should examine the record "in the light most favorable to the party opposing the motion". *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

### LEGAL ANALYSIS

### I. LIMITATION OF MALPRACTICE ACTIONS.

Under Puerto Rico law, an action for damages for negligence must be commenced within one year of its accrual. 31 P.R. Laws Ann. § 5298(2). The Puerto Rico Supreme Court has construed this provision as incorporating a discovery rule. *Villarini–Garcia*, 8 F.3d at 84. Thus, a claim accrues, and the one year period starts to run, not at the time of the injury, but upon the discovery by the injured party of the injury and of its author. *Espada v. Lugo*, 312 F.3d 1, 5 (1st Cir.2002)(*citing Tokyo Marine & Fire Ins. Co. v. Pérez & Cia., De Puerto Rico, Inc.*, 142 F.3d 1, 3 (1st Cir.1998)).

Title 31 of the Laws of Puerto Rico Annotated, § 5298, provides that:

> The following prescribe in one year: ... Actions to demand civil liability for grave insults of calumny, and for obligations arising from fault or negligence ... from the time the aggrieved person had knowledge thereof. Art. 1868 (1930).

The one-year statutory period may be tolled under appropriate circumstances. 31 P.R. Laws Ann. § 5303 ("Prescription of actions is interrupted by their institu-

tion before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor.").

Once a plaintiff acquires knowledge of the fact of his/her injury, a mistake of law as to the time of its accrual should not be allowed to resurrect a time-barred cause of action. *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979) (in medical malpractice case, so long as the plaintiff is aware of "the critical facts that he has been hurt and who has inflicted the injury," the statute of limitations is triggered). *See* Sheldon Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983*, § 9.04 at 253 (*commenting* that the medical malpractice discovery accrual rule "is also the rule in § 1983 cases"). *See also Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 354 (1st Cir.1992).

### A. Time frame when plaintiffs acquired knowledge.

Co-defendants submit in their motion for summary judgment that co-plaintiff Milagros García had the duty to inquire into the reasons for her health injury well before the date claimed of September 30, 1996, and that by the time extrajudicial claims were made the action was already time-barred. Co-defendants assert that plaintiffs should have been diligent in finding the extent and nature of co-plaintiff Milagros García's injuries due on account of the graft surgery and the quality of medical care provided.

In opposition, plaintiffs submit that the claim in this case accrued not at the time of the injury but when plaintiffs discovered the cause of the injury and who committed it pursuant to *Villarini–García*, 8 F.3d at 84. It is also alleged that during the time the medical-patient relationship persisted, the physicians' representations and asser-

tions as to the patient's condition were misleading, making them unable to acquire the necessary knowledge of the injury and who was responsible, for which tolling was appropriate.

Under the discovery rule encompassed by § 1802, a claim does not accrue when a person has merely a hint, suspicion or rumor of the claim, but once a duty to inquire into the existence of the claim rises. *McIntyre v. United States*, 367 F.3d 38, 2004 WL 1045544 (1st Cir.2004).

On the basis of the above premises, it becomes evident that there are genuine issues of fact, resting on credibility determinations, as to the moment when plaintiffs acquired knowledge of Milagros García's damages. There is also controversy as to the representations and assertions allegedly made by the physicians which prevented plaintiffs from acquiring said knowledge. Therefore, summary disposition is not appropriate and co-defendants' request for summary judgment should BE DENIED.

### B. Article 1802—joint tortfeasors.

Under Article 1802 of the Puerto Rico Civil Code, when the negligent acts of more than one person have adequately caused a harm, each such person is a joint tortfeasor who is liable in full to the plaintiff for the harm caused. *Tokyo Marine & Fire Ins. v. Pérez & Cia.*, 142 F.3d 1, 4 (1st Cir.1998).

Under Article 1802, a person is liable for the harm he or she may have negligently caused. In order for liability to attach, the negligent act must be the "adequate cause" of the harm. Adequate cause, a concept similar to proximate cause, permits more than one person to be found to have "caused" the harm. *Id.; see also*

*Marshall v. Perez Arzuaga*, 828 F.2d 845, 847 (1st Cir.1987).[1]

Co-defendants claim that there is no joint liability because the acts were diverse in time and nature and there is a lack of solidarity among the physicians who treated co-plaintiff. Co-defendants contend that their identity was known to plaintiffs since the outset and they still pursued their extrajudicial claim only as to co-defendant García Rinaldi, who is not a party to this summary request.

Co-defendants' claims are without merit. Under solidarity of joint tortfeasors, the Puerto Rico Supreme Court has held that physicians were jointly and solidarily liable for their multiple acts, omissions and events that combined to cause them, although their actions were not contemporary but consecutive. *Riley v. Rodriguez De Pacheco*, 119 D.P.R. 762, 19 P.R. Offic. Trans. 806, 851–852, 1987 WL 448254 (1987); and *Cruz v. Corporacion De Servicios Del Centro Medico de Puerto Rico*, 113 D.P.R. 719, 744, 13 P.R. Offic. Trans. 931, 960–962, 1983 WL 204245 (1983) (*holding* injury in *solidum* by emergency room physicians and orthopedists who provided treatment on different days at different locations).

Accordingly, if co-defendants are eventually found liable in this case, they will be joint tortfeasors liable each in full to plaintiffs for the harm caused.

C. Tolling through extra-judicial claim as to joint tortfeasors.

As to joint tortfeasors, the statute of limitations is tolled when a claim is filed against another tortfeasor and the interruption of the tolling period against one defendant tolls the period for any defendant who is solidarily liable with the first. *See Tokyo Marine*, 142 F.3d at 4. The extrajudicial tolling under 31 L.P.R.A. § 5303 would restart the statute of limitations on the date of the extrajudicial claim and once successfully interrupted, the full period begins to run again. *See Díaz De Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471, 475, 110 P.R. Offic. Trans. 597, 606, 1980 WL 138494 (1980) ("The letter sent on April 15, 1974 ... was an extrajudicial claim. On that date, a new one-year period of limitations began to run."); *see also González García v. Puerto Rico Elec. Power Authority*, 214 F.Supp.2d 194, 201 (D.Puerto Rico 2002).

Insofar as the extrajudicial claims, plaintiffs submitted several specific claims made through letter to Dr. García Rinaldi which they allege tolled the limitation of their actions as to those co-defendants who are jointly liable. Furthermore, plaintiffs aver that the limitation statute was tolled because it is not sufficient to have notice of the ill effects after the surgery and post-surgery complications, more so on account of co-defendants' representations and/or misrepresentations of the nature of her conditions.[2] It was not until the surgery performed by a third party that plaintiffs claim they were informed that the graft infection, the embolizing, and its resulting persistent gangrene and complications had been caused by inadequate post-surgical treatment of defendant García Rinaldi and

---

**1.** See *Ortiz Torres v. K & A Developers, Inc.*, 136 P.R. Dec. 192, 1994 WL 909260, at *3 (May 25, 1994); *Sociedad De Gananciales v. González Padín*, 117 P.R. Dec. 94, 1986 WL 376809 (1986); *Jiménez v. Pelegrina Espinet*, 112 P.R. Dec. 700, 1982 WL 210615 (1982).

**2.** Plaintiffs aver that codefendants had represented her complications to be caused either by a heart illness, a blood illness or a malignancy in the duodenum, up until September 30,1 996, when through treatment by a third party they found that the injuries had been caused by an infected graft and improper post-surgical treatment by codefendants.

that co-defendants García Rinaldi and López de Victoria were most reasonably the ones at fault for the recently discovered injury.

Having discussed above that knowledge of damages and those liable thereof cannot be disposed summarily, for purposes of this summary judgment we will assume that plaintiffs' claim accrued by September 30, 1996.

There is no controversy that plaintiffs made extrajudicial claims to co-defendant Dr. García Rinaldi on August 15, 1997, June 11, 1998, May 14, 1999, February 10, 2000, and December 9, 2000. Upon filing of their judicial claim, plaintiffs claimed defendants were solidarily liable for co-plaintiff Milagros García's damages.

These letters constituted an extrajudicial claim, tolled the statute of limitations, and restarted the one-year time period. The new one-year period began upon the receipt of each of the extrajudicial claim by co-plaintiff to Dr. García Rinaldi. Thus, the extrajudicial tolling under 31 L.P.R.A. § 5303 that has already been determined in regard to alleged tortfeasor García Rinaldi would restart the statute of limitations on the date of the extrajudicial claim and once successfully interrupted, the full period begins to run again. *Díaz De Diana,* 110 D.P.R. at 475, 1980 WL 138494.

The prescription period was tolled as to all the joint tortfeasors, including co-defendant Dr. López de Victoria, as "the interruption of the prescription against one defendant also tolls the statute against any other defendants who are solidarily liable

with the first." *Tokyo Marine,* 142 F.3d at 5 (citing 31 L.P.R.A. § 5304 "[i]nterruption of prescription of actions in joint obligations equally benefits or injures all the credits or debtors." (official translation 1991); *Arroyo v. Hospital La Concepción,* 130 D.P.R. 596, 1992 WL 755630, (1992)); *Serrano Strubbe v. Hernandez Plana,* 2002 WL 32006329, *12 (D.Puerto Rico 2002).

Since the solidarity doctrine allows for the timely inclusion of a solidary tortfeasor, such as co-defendant Dr. López de Victoria, as long as the original claim is considered to be timely, the subsequent addition of an alleged tortfeasor would not be considered to be time barred.

As such, co-defendant Dr. López de Victoria's claim of estoppel based on plaintiffs' extrajudicial claim against a tortfeasor, is not substantiated and is opposed by the solidarity and joint liability expressed by § 1802 statute and by similarly situated jurisprudence above discussed.

Accordingly, co-defendants' summary judgment request as to this matter should BE DENIED.

## II.   OTHER RELATED ISSUES.

Co-defendant López de Victoria requested an extension of time for additional discovery. The Court has already ruled as to time limitations for dispositive motions in this case. All subsequent replies, sur-replies, supplemental motions, their oppositions and responses thereto properly submit the parties' positions as necessary to resolve the summary judgment issues.[3]

---

3.  **Docket No. 131**

RESPONSE in Opposition to Motion to Compel filed by all plaintiffs.
**Docket No. 128**
MOTION to Stay Response and Opposition.
**Docket No. 127**

REPLY to Response to Motion Plaintiffs' Motion to Strike filed by Guaranty Association of Miscellaneous Insurance of Puerto Rico.
**Docket No. 126**
MOTION to Compel Disclosure of Witness' Identity and, MOTION for extension of time to File Supplemental Brief in Support of Motion for Summary Judgment filed by Jose L.

Accordingly, the extension of time for additional discovery should BE DENIED.[4] If the Court, however, allows the extension, any subsequent filing should be considered as part of any opposition to this report and be dealt accordingly.

## CONCLUSION

Considering the above discussed, it is recommended that co-defendants' Motions for Summary Judgment **BE DENIED."**

## ANALYSIS OF ADDITIONAL ISSUES RAISED

In addition to the above incorporated report and recommendation, having defendants deposed the witness and submitted in the Supplement to Motion for Summary Judgment filed by codefendants Insurers' Syndicate for the Joint Underwriting of Medico–Hospital Liability Insurance (SIMED) and Dr. Orlando López de Victoria, some additional evidence to their claim that plaintiffs' cause of action is time-barred, (Docket No. 152), further considering plaintiffs' opposition (Docket No. 144), and once again their respective reply and the sur-reply (Docket Nos. 151, 162), there is still no apparent need to further address

the issue of the effect of tolling as to claims against co-defendant Dr. García Rinaldi on joint tortfeasors that was discussed in this Magistrate Judge's report of May 24, 2004 (Docket No. 136). As such, it is recommended that all issues raised in codefendants' supplement, items 1.1 through 2.31, (Docket No. 152) be DENIED.

Furthermore, a brief discussion of the supplemental evidence submitted by the parties to address their summary disposition request, except for the untranslated deposition testimony,[5] would show that genuine issues in controversy remain. These are to be resolved by a jury of facts, among others, as to if and when Dr. Samuel Ayala López, might have notified counsel for plaintiffs in regard to any finding in Mrs. Milagros García Colón's medical record and the proper grounds for a malpractice lawsuit. While co-defendants submit that the deposition tends to show counsel for plaintiffs, Atty. Quetglas, had an initial impression of the malpractice case by August 15, 1997, when the first claimed tolling letter was sent to Dr. García Rinaldi, plaintiffs' opposition submits otherwise (Docket No. 161); to wit, that

Gonzalez–Castaner on behalf of Orlando Lopez–de–Victoria.
**Docket No. 125**
MOTION to Strike Re: 124 Supplemental Motion [sic] Memorando of Law in Support Summary Judgement.
**Docket No. 124**
Supplemental Motion [sic] Memorando of Law in Support Summary Judgement.

4. **Docket No. 131**
RESPONSE in Opposition to Motion to Compel filed by all plaintiffs.
**Docket No. 128**
MOTION to Stay Response and Opposition.
**Docket No. 127**
REPLY to Response to Motion Plaintiffs' Motion to Strike filed by Guaranty Association of Miscellaneous Insurance of Puerto Rico.
**Docket No. 126**
MOTION to Compel Disclosure of Witness' Identity and, MOTION for extension of time

to File Supplemental Brief in Support of Motion for Summary Judgment filed by Jose L. Gonzalez–Castaner on behalf of Orlando Lopez–de–Victoria.
**Docket No. 125**
MOTION to Strike Re: 124 Supplemental Motion [sic] Memorando of Law in Support Summary Judgement.
**Docket No. 124**
Supplemental Motion [sic] Memorando of Law in Support Summary Judgement.

5. To elucidate issues raised by the parties only translated exhibits on record were considered. See *Gonzalez–De–Blasini v. Family Dept.,* 377 F.3d 81 (1st Cir.2004); *U.S. v. Flecha–Maldonado,* 373 F.3d 170, 177 (1st Cir.2004); *Estades–Negroni v. Assoc. Corp. of North America,* 359 F.3d 1 (1st Cir.2004).

Dr. Ayala was retained by plaintiffs solely to examine and organize the voluminous eleven volumes of the medical record of Mrs. Milagros García Colón; that Dr. Ayala's participation was not as an expert and he provided no opinion to plaintiffs or their counsel and solely prepared a summary of the record, without any written medical opinion as to any deviation from the proper standard of care, and that Dr. Ayala did not review the record with the intent to assess liability.

Consideration of the above supplemental evidence now submitted by co-defendants serves no purpose in defeating the previous determination of this Magistrate Judge as to tolling and joint tortfeasors' liability.

Co-defendants also submit that a discussion between Mr. Olavarria and Dr. López de Victoria at the Hospital would tend to indicate knowledge as to a possible malpractice. Plaintiffs aver that the discussion was not as to any legal issue but as to their right to know what was going with their mother's conditions since the physicians had not met with the family non properly informed the situation regarding her health. Mr. Olavarria also stated that he trusted the physicians who were in charge of their mother's conditions and their representations, who were the ones with access to the lab tests and X-rays, and although it seemed that her health was deteriorating, he believed though that the doctors had the required knowledge. He never at the time thought of the possibility of anything improper going on until the surgical intervention by Dr. Rodríguez Vega found the decomposed graft in the duodenum which was then attributed to Dr. García Rinaldi's lack of proper post-medical attention and treatment. If any-

thing, the discrepancies raise genuine controversy of facts and issues of credibility that are not subject of summary disposition.[6]

The evidence tends to show that the patient and her children, in their trust to attending physicians and the Hospital Pavía, and lacking knowledge of the cause of their grieve, endured numerous amputations to her lower extremities while they continued to seek treatment from defendants. Thus, the doctrine laid down in *Colón Prieto v. Geigel*, 115 D.P.R. 232, 246–247 (1984), that the period begins to run as of that knowledge-would be applicable to this defendants' request for summary disposition. "The position mentioned is the fairest and most equitable. We safeguard the aggrieved party's right to seek redress, while we abstain from rewarding the person who, having caused the damage, took refuge in his patient's trust and ignorance trying to avail himself of the circumstances in order to defeat the action. 'Apart from that, in order to exercise the action, not only must the aggrieved person know that he has been injured; he must also know who is the author of the injury in order to address the action against him, so he may know who to sue; reason why, the statute of limitations is triggered off by the notice of the injury, plus notice of the person who caused it.' (Underscore supplied.) 1 A. Borrell y Soler, Derecho Civil Español 500, Barcelona, Ed. Bosch (1955). See: M.J. Arganaras, La Prescripcion Extintiva 245, Buenos Aires, Ed. Tea (1966); II–2 L. Enneccerus, Tratado de Derecho Civil 1163, Barcelona, Ed. Bosch (1966)." *Riley v. Rodriguez De Pacheco*, 19 P.R. Offic. Trans. 806, 820 to 19 P.R. Offic. Trans. 806, 821 (1987).

6.   Plaintiffs include also a translated portion of Mr. Bienvenido Olavarria's deposition testimony that he had no reason to suspect the doctors had engage in malpractice at the time Mrs. Milagros Garcia Colon was under their care and contradicting defendants' version that a discussion with Dr. López de Victoria. (Docket No. 184)

As to issues raised by Hospital Pavía, other than joint tortfeasor's liability, plaintiffs have submitted in their opposition that the patient, during her second through her fifth amputation, went directly to the Emergency Ward of said hospital, and not to any particular doctor. Her numerous re-admissions at Hospital Pavía without having detected therein the cause of her septicemia, multiple surgical procedures, and the failure to monitor faulty medical care would make Hospital Pavía liable for its mismanagement of plaintiff Milagros García's unresolved medical conditions, notwithstanding numerous opportunities (Docket No. 144, 124).

Hospitals are required to monitor the work of physicians with hospital privileges, and to intervene when possible in the face of an obvious act of medical malpractice. *See Márquez Vega v. Martínez Rosado,* 116 P.R.R. 489, 500, 1985 WL 301900 (1985); see also Carlos J. Irizarry Yunque, Responsabilidad Civil Extracontractual 253 (1996). *Daniels–Recio v. Hospital Del Maestro, Inc.,* 109 F.3d 88, 92 (1st Cir. 1997).

In a medical malpractice suit, a plaintiff may sue a doctor, a hospital, or both, as long as he/she can establish negligence on the part of each particular defendant. This is so because a hospital may be found vicariously liable for the negligence of its employees. *See, e.g., Lama v. Borras,* 16 F.3d 473, 480–81 (1st Cir.1994) (discussing negligence and the *prima facie* elements of a medical malpractice suit against a hospital); see also *Blas Toledo v. Hospital Nuestra Senora De La Guadalupe,* 98 JTS 101, 1410, 1430–32, 98 TSPR 111 (discussing various ways in which a hospital may incur in liability for negligence when treating a patient); see also *Recio v. Hospital del Maestro,* 882 F.Supp. 220, 227–28 (D.P.R.1995) (for a discussion of vicarious liability of a hospital); *Calcano–López v. Canetti–Mirabal,* 106 F.Supp.2d 200, 204 (D.P.R.2000).

Thus, it is recommended that summary judgment requested by co-defendants be DENIED.[7]

## CONCLUSION

This Magistrate Judge finds that no significant new issues were raised that would entail a different result on the previous findings and proposed recommendation that summary disposition, as requested by the defendants, be denied. (Docket No. 135). Thus, for all legal purposes, the report and recommendation issued on May 24, 2004, is hereby reiterated and it is recommended that summary judgment requested by co-defendants be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) (**"Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round"**) (emphasis supplied).

IT IS SO ORDERED.

September 3, 2004.

---

7. So as to include in this second Report and Recommendation Docket No. 90, 91, 106, 124, 151, 152, and 153.